Cuma, per
Colcock, J.
In support of the first ground taken in this case, the defendant’s counsel rely on the statute 3 Hen. VIL c. 4, declaring “ all deeds of gift made to defraud creditors void.” Pub. Laws, 42. It is a sufficient answer to this, that this very deed has been declared to be a good deed to convey the personal goods and chattels for, the purposes therein intended, in the case in, 2 M’Cord’s Reports, 252(1). But as it was suggested that this statute was not then brought to the view of the Court; and the circumstances of this case are different from those of the case referred to, I will briefly inquire if there be any thing in this case which can make that act applicable.
The chapter is in the following words, “Item, that *239 where oftentimes deeds of gift of goods and chattels have been made to the intent to defraud their creditors of their duties, and that the person or persons that maketh the said deed of gift, goeth to sanctuary or other places privileged, and occupieth and liveth with the said goods and chattels, their creditors being unpaid: It is enacted, that all deeds of gift of goods and chattels, made or to be made, of trusts to the use of that per-77 1 son or persons, that made the same deed of gift be void, and of none effect.” Now it is clear from the language of the statute that it was intended to protect the rights ... . _ 1 , ot creditors; and in the case before us there are no ditors of the person making the deed, either prior or subsequent to its execution. The defendant cannot considered as a creditor. The note of a feme covert is a mere nullity. It does not bind her. Rut if it did, the defendant took it with a full knowledge of the tence of the deed of trust and its provisions. How then can it be said that he has sustained, or could by any possibility sustain any injury in consequence of this deed “? His taking the note was amere speculation. He on the same footing which he did before the coverture ° the cestui que trust. He has the note of the husband for his debt. The statute then has no application. The statute of 13 Eliz. chap. 5, was also relied on; but is still more foreign to the case, for it relates to sub- , sequent purchasers.
The statute 3Hen.vii.c! deeds'ofgift5 of goods made-m trust to the-ontyhí”favoúr creditors.
a person nCte‘of a^feme had exe-cutcd such a deed, given durin§ f 3ub' verture with pecially as he had notice of fore he con-"
The statute o'f uses does not execute a uPon a chattel interest, nor where the trustee not only holds the estate, but has some act to do; as to receive and pay over the rents and profits or to convey, &c.
The second ground cannot be maintained. For though m cases of absolute trusts the statute of uses does execute the use in the cestui que trust, and make him the complete owner of the lands or tenements, both in law and equity: yet it was very early decided by the cotemporaneous expositors of the statute, that a use could not be raised upon a use; that the word seised could only apply to a freehold interest, and therefore the use of a chattel interest could not be executed ; and *240 lastly, that where the trust was executory, that is where the trustee was required to act and not merely to hold the estate, that there also the use could not be executed. Mr Maddock, in his first volume, 448 and 449, after stating the first position above mentioned, that a use could not be raised upon a use, which has no application to the case before us, goes on to observe, “ the Judges also held that as the statute mentioned only such persons as were seised to the use of others, it did not extend to copy-holds or to terms of years or other chattel interest, whereof the tenure is not seised but only possessed. and therefore if a term of one thousand years was limited to A. to the use of (or in trust for) B., the statute did not execute this use, but left it as at common law. They further held that where lands are limited to trustees to receive and pay over the rents and profits, the use is not executed, but the lands remain in them to answer those purposes. Where therefore there is a conveyance to trustees in trust to convey or to sell, or to pay the profits to a feme covert, and as it seems in all cases where any control or discretion is given to the trustees in the application of the profits of the estate, as to pay annuities, or to make repairs, or to provide for the maintenance of the cestui que trust, the legal- estate remains in the trustees, unexecuted by the statutewhich doctrine has never been controverted, and is supported by innumerable cases there referred to: so that the freehold in this case remains in the trustees.
The third ground is, that, independent of the statute of uses, the legal estate, by which is meant the fee, is in Mary Hays, and not in Thomas Wilson.
In the first place there are no facts disclosed in the case which enable the court to determine the point. I think it is presumable from the language of the deed that the fee never was in her. She speaks of the property as having been left to her by her father *241 by will; and she only disposes of her life estate. He probably left her but a life estate. But if the whole estate was in her, the defendant could not come at the remainder until the determination of the life estate; and it will be time enough for him then to make the attempt. In which attempt his success would depend alone on his establishing a right to recover against her on the note made during coverture.
The Court where a no disability makehisde0 fence at law.
a married TcTwhich0 tends to the destruction of
I come now to the last ground, the want of jurisdiction in the Court, and which is now for the first time made in the case.
Trusts are the creatures of the Courts of Equity. It is their province to guard the rights of all who are interested in a trust deed. Here a separate estate has been created for the use of the complainant Mary Hays. Her husband has prevailed on her to do an act which is in itself unlawful, and calculated to injure, or at all events to affect, the property which has been secured to her. The defendant availing himself of her signature to the note has obtained a judgment against her, and sold the land secured by the deed of trust. She could know nothing of these proceedings. The trustee, from any thing that appears, was also ignorant of them. And the defendant threatens to make further attempts to proceed. He has thus gotten an unconscientious advantage over the cestui que trust, and she calls on the Court to restrain him from availing himself of it. The Court of Equity will never interfere where a party, who was free to act and to'protect his rights, has neglected to make a defence at law. such was not the case here. Had this cestui que trust been at liberty to defend herself, she could have done it completely: for in the case of Ewing v. Smith, 3 Desaus. Rep. 417, it was determined that a married woman can do no act which tends to the destruction of her trust estate.
her trust estate ; and where she gave ;i note with her husband upon which a judgment was obtained, and her trust estate sold, the Court of Equity will enjoin the proceedings at law, andrelievethe trust estate.
In a case in which the Court obviously had no jurisdiction, the objection to the jurisdiction can never be made too late; but where it is doubtful, and the defendant instead of demurring has answered in chief, it is too late on the final hearing to object to the jurisdiction.
In Bateman v. Willoe, 1 Scho. & Lefr. Rep. 261, the Lord Chancellor says, “ where a party has possessed himself improperly of something by means of which he has an unconscientious advantage at law, equity will either put it out of the way, or restrain him from using it.” These reasons are probably sufficient to shew that the Court had jurisdiction. But as Chancellor Kent in the case of Underhill v. Van Cortland, 2 Johns. Cha. Rep. 369, very properly remarks, “ at any rate, by answering in chief instead of demurring, the defendants have submitted to the cognizance of the Court, and they, came too late at the hearing on the merits to raise this objection. It would be an abuse of justice if the defendant was permitted to protract litigation to this extent, and with the expense that has attended this suit; and then at the final hearing interpose with this preliminary objection.” Such he remarks, “ appeared to be the opinion of a majority of the Court of Errors in the case of Ludlow v. Simond, 2 Caines’s Cases in Error, 40. 56..”
In a case in which there was obviously no ground of jurisdiction, the Court might be induced to interpose even at the last moment; but they will not be astute to discover such an objection at the very moment when all the rights of the parties are about to be finally determined on and put at rest for ever.
Decree affirmed.

 There is no such case at that page, unless the Court alludes to Ramsay v. Marsh.